## CHARLESTON.

ATKINSON v. VIRGINIA OIL & GAS COMPANY.

Submitted September 10, 1912.    Decided September 23, 1913.

1.    MINES AND MINERALS—*Oil and Gas—Damages—Percolating Waters.*

The lessor in an oil and gas lease, guaranteeing to him the payment of rental for gas wells and a supply of gas for his mansion house from the same, has a right of action at common law and also by virtue of the provisions of Chapter 62D of the Code of 1906, for injury to a producing and paying gas well on his premises by the percolation of water into the gas bearing sand from an abandoned well on adjacent land consequent upon the failure of the owner of such abandoned well to plug it or adopt any means or measures for the prevention of such injury to the neighboring well of the lessor.    (p. 709).

2.    ACTION—*Statutory Remedy—Exclusiveness—Oil and Gas— Failure to Plug Well.*

The remedies given to an adjacent or neighboring land owner by Chapter 62D of the Code of 1906 are not exclusive.    (p. 710).

3.    MINES AND MINERALS—*Oil and Gas—Failure to Plug Well— Action for Damages.*

In a declaration for such injury, it is not essential to aver that, at the time thereof, the plaintiff was in receipt of the gas rentals for the injured well or supplied with gas therefrom for use in his mansion house, under the stipulations therefor in the lease.    (p. 712).

Error to Circuit Court, Marshall County.

Action by R. M. Atkinson against the Virginia Oil & Gas Company, a corporation.    Judgment for defendant, and plaintiff brings error.

*Reversed and Remanded.*

*Noyes & Ritz,* for plaintiff in error.

*S. G. Smith* and *J. B. Sommerville,* for defendant in error.

POFFENBARGER, PRESIDENT:

The plaintiff's declaration in this action of trespass on the case, held insufficient on a demurrer thereto and to each of its four counts, claims a right of action for damages arising out of the following facts set forth in the declaration:

Owning a small tract of land, containing an acre and a half, the plaintiff, on the 24th day of May, 1905, executed an oil and gas lease thereon in favor of John T. Scott, containing among other things, an agreement on the part of the lessee to pay the lessor $75.00 quarterly, in case a well should be found on the premises producing gas in sufficient quantities to justify the marketing of the same, the first payment to mature thirty days after the well should be turned into the pipe line for marketing. This lease was assigned by Scott to the Ohio Valley Gas Company, which company completed a well on the property about the first of April, 1906, finding gas in 'paying quantities in the "Big Injun Sand," and connected it with the main line and the gas therefrom was marketed off of the premises. A large adjoining tract was owned by one S. T. Alley, who gave a lease thereon for oil and gas purposes to the Virginia Oil & Gas Company, or to some one who assigned it to that company. In the spring of 1907, the Virginia Oil & Gas Company drilled a well on the Alley land into the "Big Injun Sand," at a point about 100 feet distant from the gas well on plaintiff's land and found oil, but pulled the casing from said well about the last of September, 1910, and abandoned it, without having plugged it or taken any other precaution against the escape of gas or oil or surface water or damage to the adjacent property or the well thereon. In consequence of this action on the part of the Virginia Oil & Gas Company, water entered through the abandoned well into the strata of gas bearing sand and percolated to such an extent therein and so far permeated it as to obstruct, impede and destroy the flow of gas into the plaintiff's well, so that it became worthless and was wholly lost to him as a producing well.

The first count charges a common law right of recovery on the wrongful failure of the defendant to plug the well, that being one recognized method of avoiding injury likely to ensue upon the abandonment thereof. The second count claims such right on the ground of failure on the part of the lessee to take any precautions against injury by such means. The third count is based upon the violation of a statute, requiring owners of wells, intending to abandon them, to plug them; and the fourth upon violation of the statute by failure to use any other method of preventing injury. The first two counts stand upon an alleged common law right of action and the other two upon a statutory right of action.

The lack of a precedent or line of authorities, asserting a right of action for injury of the kind described in the declaration, necessitates resort to general legal principles and the analogies of the law, for disposition of the question presented. As against any person except the owner of the land, the lessee could make such use of it, without liability to strangers, as the owner himself could without such liability. The owner was bound to use his property in such manner as not to injure the property of the adjacent owner, provided he could avoid such injury by the exercise of care and abstention from negligence. In other words, having the right as owner to the full enjoyment of his property and to do thereon what he pleased, he was nevertheless bound to exercise care in such use to avoid injury to his neighbor, if such injury could be avoided by the adoption and observance of reasonable precautions. *Walker* v. *Strosnider,* 67 W. Va. 39, 46; *Veith* v. *Salt Co.,* 51 W. Va. 96. An owner may improve his real property in such manner as he may see fit, and if, in consequence thereof, the surface water flows from his premises onto the grounds of his neighbor, he is not liable for any resulting injury. But, if, through negligence or design, he collects the surface water on his premises and casts it in a body on to the lands of his neighbor, he is liable for such injury as may result. In the exercise of his riparian right, he may consume, for domestic and ordinary purposes, all of the water of a stream passing over his land and thus deprive the adjacent owner below him on the same stream of the use of water there-

from. The same rule is applicable to the enjoyment of percolating or subterranean water by adjacent owners. *Pence* v. *Carney,* 58 W. Va. 296. But an owner is liable for injury resulting from the diversion of a stream or the waste of water from subterranean streams supplying springs on adjacent property. *Pence* v. *Carney.* Similarly, it is now almost universally held that an owner of land cannot rightfully pollute or poison percolating water in his premises so as to injure or destroy streams or wells supplied therefrom on adjacent property. *Gilmore* v. *Royal Salt Co.,* 84 Kan. 729, 34 L. R. A. (N. S.) 48; *Gaslight & Coke Co.* v. *Howell,* 92 Ill. 19; *Gas Co.* v. *Murphy,* 39 Pa. 258; *Sherman* v. *Iron Works,* 5 Allen 213; *Haugh's Appeal,* 102 Pa. 42; *Brewing Ass'n.* v. *Peterson,* 41 Neb. 897; *Gaslight & Coke Co.* v. *Graham,* 28 Ill. 73; *Gas Co.* v. *Pebley,* 25 Fla. 381; *Lowe* v. *Cemetery Ass'n.,* 58 Neb. 94.

The declaration charges no pollution or contamination in the ordinary sense of the term, but it nevertheless avers and charges a very substantial injury. It sets up as a fact generally known to oil and gas men that the admission of water into the oil or gas bearing stratum or sand retards or impedes, and often completely stops, the flow of oil and gas in such sand, and charges that the open and unplugged well on the Alley land collected water which entered the sand from which gas was extracted on the plaintiffs land in such quantities and in such manner as to destroy his well. The injury thus shown is, in its general nature, the same as that inflicted by the pollution of a water well so as to render the water therein unfit for use. In each case, there is injury which could have been avoided by the exercise of care and caution. Though a gas well is not so essential to the enjoyment of premises as a water well, it is nevertheless valuable, and necessary, in the legal sense of the term, to the full enjoyment of the premises. Hence wanton or negligent injury to it ought, upon principle, to call for redress in the courts as in the case of such injury to wells supplying water for domestic purposes. In our opinion, therefore, the declaration sets forth a good cause of action at common law.

The statute, section 2 of chapter 62D of the Code of 1906, makes it the duty of an owner of a well, before abandoning or

ceasing to operate it and before drawing the casing therefrom, to plug it in the manner described by that section; and section 5 of that chapter makes the lessee or any person managing, operating, controlling or possessing any well, an owner for the purposes of the act. The statute has for one of its purposes the prevention of the result complained of here. It requires the well to be filled with sand or rock sediment to a depth of at least 50 feet from the top of the oil or gas bearing sand or rock, and a wooden plug, equal in diameter to the diameter of the well below the casing, to be driven at least five feet below the casing. After the withdrawal of the casing, another plug is required to be put in and the well to be filled on top of that plug to a depth at least 50 feet above the top of the oil or gas bearing sand or rock. From all this, it is apparent that the injury complained of is the direct and immediate result of a violation of the statute, wherefore, on well settled principles, there is a right of action under the statute as well as upon the common law. Bishop on Non-Contract Law, section 141; *Norman* v. *Coal Co.,* 69 S. E. 857. "As a general rule, where an act is enjoined or forbidden under a statutory penalty, and the failure to do the act enjoined or the doing of the act forbidden has contributed to an injury, the party thus in default is liable therefor to the party injured, notwithstanding he may also be subject to a penalty." *Parker* v. *Barnard & Others,* 135 Mass. 116, 120.

As the act prescribes a penalty for non-compliance with its requirements, recoverable in the name of the state at the instance and upon the relation of any citizen of the state, and authorizes a neighboring land owner or lessee or owner of oil or gas rights in neighboring land to enter upon the land on which the abandoned well is and plug the same and charge the owner thereof with the reasonable cost and expense of the work, and also to proceed by bill in equity to compel the owner to comply with the statute, it is contended that these remedies were intended by the legislature to be exclusive and to take away such remedies as the common law gives. We are unable to concur in this view. As to a right of action for damages, the statute is silent. It fails to deal with that subject at all. Failing to cover this feature of the subject-matter, it lacks comprehensive-

ness, one of the essentials of the application of the rule of construction invoked. *State* v. *Harden,* 62 W. Va. 313; *State* v. *Mines,* 38 W. Va. 125; *Herron* v. *Carson,* 26 W. Va. 62; *Grant* v. *Railroad Co.,* 66 W. Va. 175. Failure on the part of the adjacent owner to avail himself of the statutory remedies may be a mitigating circumstance, but as to this we express no opinion.

As owner of the property on which the injured well was, the plaintiff had sufficient interest to confer a right of action, even though the rental stipulated for in the lease had not been paid or he was not in receipt of the same at the time the well was injured, or was not in receipt of gas from the well for the purposes of his mansion house. He would be entitled to damages, as owner of the premises on which the well was, for, although he may not have received any rentals nor any gas, he had the right to demand them, upon the facts stated in the declaration, for a producing well had been drilled and connected with the pipe line and the gas therefrom had been marketed off of the premises.

The court having erred in sustaining the demurrer to the declaration and the several counts thereof, the judgment will be reversed, the demurrer overruled and the case remanded for further proceedings.

*Reversed and Remanded.*